Reese, J.
delivered the opinion of the court.
It appears from the bill, answers, exhibits and proofs that Christopher Hunt, by his last will and testament, devised all the property which he possessed or had received in right of his wife to her absolutely, and all the balance not necessary for the payment of debts and legacies, whether real or personal, he gave to her for life, with remainder to the defendant, John H. Winbush. At the time of testator’s death his debts amounted to some eight or nine thousand dollars, to have paid which promptly would have required the sale of a considerable number of slaves. This the executor proposed to have done, but the owner of the life estate urging that it was the wish of her husband, the testator, made known to her verbally, that none of his estate, real or personal, should be sold, the executor forebore to sell any of the property for the payment of debts, but arranged with the creditors for the postponement of their claims, and by the agreement and *504 consent of the tenant for life, kept up and carried on the farm - and the entire establishment for the purpose of applying the nett annual profits, after deducting expenses and the maintenance of the family, to the satisfaction and extinguishment of the debts. This mode of conducting tfie matter continued for some years, and until after the death of the tenant for life; and considerable.sums arising from the annual profits of the establishment were appropriated to the payment of the debts of the testator. This bill is filed by the personal representative of the tenant for life against the executor and the remainder-man for an account and for contribution. The debts in question were a charge upon the property devised, and it would have been competent for the executor, and his duty, to have sold the slaves and personal property bequeathed, and to have paid the debts, unless the owner for life or of the remainder, or both, had paid the debts or made some arrangement, such as was in fact adopted. If such- sale had taken place the loss of each owner would .have been in proportion to his interest in the property. As no sale took place, but a portion of the debts charged upon the property was paid by the annual profits accruing during the continuance of the life estate, such payment so made was in effect and as to the equitable claim for contribution between the tenant for fife and the remainder-man, as if paid in money by the former, and out of her separate means or absolute property. If the property had been sold out and out for the payment of debts, their loss, as has been said, would of course have been in proportion to their interest in the estate, and if a surplus had been created by such sale the tenant for fife would have been entitled to the interest upon such surplus, and the remainder-man to the principal. Upon well settled equitable principles it was the duty of the tenant for fife to have kept down the interest of the debts charged upon the property. In the account, therefore, which must be taken between the personal representative of the tenant for fife and the remainder-man, it is not material to enquire into the products and expenses of the farm, into the particular times at which payments were made, or into the value of the hire of the slaves which absolutely belonged to the tenant for life. *505 It will be sufficient to ascertain the amount of payments made by the tenant for life of the debts of the testator over ■ and above or exclusively of accruing interest, as the executor, in the arrangement made with the tenant for life, was in effect nothing more than her agent or bailiff in conduct-, ing the farm, selling the crops, &c.
As to the crop of 1836, the representative of the tenant for life is. entitled to its value as it stood at the time of the death of the tenant for life; in other words, the expenses of gathering in the corn and picking out the cotton, &c. and bringing both or all to market, must be deducted from the proceeds, crediting the representative of the tenant for life with the value of the services of the slaves, the absolute property of the tenant for life, so far as employed therein.
As to the stock of cattle, horses, mules, hogs, sheep, &c, and as to wagons, carts and implements of husbandry, and also as to provisions, &c. and indeed as to all the personal' property-, except the slaves, whether consumable in the use,, or liable to be impaired and worn out, or of any other description, limited in remainder, an inquiry must be had as to the description, condition and value thereof at the time of the death of the testator and at the time of the death of the tenant for life; and if the same, by loss of number or deterioration in use, was of less value at the latter than at the former period; the representative of the tenant for life must be charged with the amount of the deficiency; but if by purchase or increase the value was enhanced, the excess or increase in value to be charged to the remainder-man. Robertson vs. Colber, 1 Hill’s Rep. 375.
As to such fixtures as a cotton gin or cotton press, am inquiry must be made as to their worth or value when they came into the hands of the remainder-man, unless rebuilt in place of such fixtures existing at the time the tenancy for life commenced; in which case the difference of value will be inquired into as under the last head.
As to the articles of personal property belonging exclusively to the tenant for life, and not part of the general establishment limited in remainder, the representative of the ten *506 ant for life will be entitled thereto if existing in specie, or to their value if converted.
The representative of the tenant for life will be entitled to the interest which accrued during the tenancy for life on any sum of money due to the testator in his lifetime, although not collected till since the death of tenant for life.
As the decretal order of the chancellor and the report of the clerk and master in the chancery court proceed upon principles in some degree differing from the above, the former will be reversed and the latter set aside, and the clerk and master of this court will enquire and report as 'herein above directed.